UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

      -against-

GEORGE ENRIQUE HERBERT,

              Defendant.

03-Cr-211 (SHS)

---

GEORGE ENRIQUE HERBERT,

              Petitioner,

      -against-

UNITED STATES OF AMERICA,

              Respondent.

10-Civ-406 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

Nearly four years after he withdrew his direct appeal from the judgment of conviction and sentence in his criminal case, George Enrique Herbert has moved this Court pursuant to 28 U.S.C. § 2255 to vacate his conviction, and in the alternative for leave to reinstate his direct appeal. The Court hereby dismisses two of three claims in Herbert's petition as untimely because Herbert did not pursue those claims with reasonable diligence once learning of the facts that he alleges give rise to the claims. Assuming without deciding that Herbert's third claim is timely raised, the Court dismisses the claim on its merits.

## I. BACKGROUND

### A. Criminal Proceedings

Herbert is a citizen of Belize and until April 2003 lived in that country. *See United States v. Herbert*, 313 F. Supp. 2d 324, 326 (S.D.N.Y. 2004). In February 2003, the United States charged Herbert in a two-count indictment with violating 21 U.S.C. § 963 by participating in a conspiracy

to import cocaine into the United States in violation of 21 U.S.C. §§ 812, 952(a) and 960(b)(1)(B)(ii) and distribution of cocaine with the intent that it be imported into the United States in violation of 21 U.S.C. §§ 812, 959(a) and 960(b)(1)(B)(ii). *See id.* In April 2003, Magistrate Judge Gabriel Gorenstein signed a warrant for Herbert's arrest. *See id.* Agents of the U.S. Drug Enforcement Agency (DEA) "transported Herbert by airplane to New York" from Belize on or about April 26, 2003. *See id.* at 327.

The circumstances of Herbert's arrest and transfer to the custody of U.S. authorities have been the subject of extensive litigation, not only in the criminal and habeas proceedings before this Court, but also in Belize.[1]

Prior to trial, Herbert moved this Court to dismiss the indictment on the ground that his prosecution in the United States violated the extradition treaty between the United States and Belize. Following an evidentiary hearing, the Court denied the motion for three reasons. First, the Court found that Herbert was not transferred to U.S. custody pursuant to an extradition request by U.S. authorities. *See Herbert*, 313 F. Supp. 2d at 328–29. Second, the treaty did not prohibit transfers such as Herbert's that did not conform to the treaty's formal procedures. *See id.* at 329–30. Third, Herbert lacked standing to object to the terms of his transfer because no "shocking governmental conduct" occurred. *See id.* at 330–32. Herbert filed a petition for a writ of mandamus in the U.S. Court of Appeals for the Second Circuit, seeking dismissal of the indictment and his repatriation to Belize. The Second Circuit denied the petition on the ground that Herbert did not show a "clear and indisputable" right to mandamus relief. *See In re Herbert*, No. 04-2795-op (2d Cir. July 6, 2004).

On December 14, 2004, after a nine-day trial, a jury found Herbert guilty of all four counts charged in a superseding indictment: one count of conspiracy to import and distribute cocaine and three counts of

---

[1] *See* PX-11 (*Herbert v. Att'y Gen.*, No. 398 (Belize Oct. 24, 2003) (finding that Belizean authorities violated Herbert's rights pursuant to the constitution of Belize by transferring him to the DEA's custody, awarding Herbert $30,000 in damages, and directing the Attorney General of Belize to take "measures to secure the return of Mr. Herbert . . . to Belize"). This Court considered the Belize Supreme Court's judgment in deciding Herbert's pre-trial motion. *See Herbert*, 313 F. Supp. 2d at 329.

distribution of cocaine with the intent that it be imported into the United States. This Court subsequently denied Herbert's motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c). *See United States v. Herbert*, 2005 WL 106909 (S.D.N.Y. Jan. 19, 2005). Among other conclusions, the Court rejected Herbert's renewed contention that his transfer to the custody of U.S. authorities violated the extradition treaty between the United States and Belize. *See id.* at *1.

Based largely on the evidence at trial that Herbert participated in the shipment of more than six thousand kilograms of cocaine en route to the United States, along with applicable sentencing enhancements, Herbert faced a potential sentence of life imprisonment pursuant to the U.S. Sentencing Guidelines. (*See* Presentence Investigation Report dated Mar. 8, 2005.) Herbert's sentencing on June 2, 2005 followed shortly on the heels of the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). The Court exercised its newly conferred discretion pursuant to *Booker* to sentence Herbert below the Guidelines range, principally to 400 months' imprisonment, to run concurrently on each count.

Through his counsel George Santangelo, who also represented Herbert at trial, Herbert timely filed a notice of appeal on June 13, 2005. (GX-2.) Before any briefing in the Second Circuit took place, on November 29, 2005 Santangelo's co-counsel Robert Culp submitted a letter to the Second Circuit "notifying the Court that he [would] file a stipulation to withdraw the appeal." (*United States v. Herbert*, No. 05-2991-cr (2d Cir. Nov. 29, 2005 docket entry).)

On January 4, 2006, Herbert submitted to the Second Circuit a stipulation seeking to withdraw and dismiss his appeal with prejudice. (*Id.* (Jan. 4, 2006 docket entry.)) Herbert had personally signed that stipulation on November 16, 2005. (GX-3, at 2.) On January 31, 2006, the Second Circuit ordered that the appeal be dismissed. *See id.*; Fed. R. App. P. 42(b).

### B.  Habeas Proceedings

The next chapter in Herbert's federal court proceedings began almost four years later, when on December 9, 2009 Herbert filed a *pro se* petition

pursuant to 28 U.S.C. § 2255.[2] That petition raised a single ground for relief: that Santangelo rendered constitutionally ineffective assistance of appellate counsel by incorrectly telling Herbert that if he withdrew his direct appeal, he would "be autom[a]tically transferred back to Belize" pursuant to an international prisoner treaty exchange program.[3] (No. 10-cv-406, Dkt. No. 1, at 4.) As part of his ineffective assistance claim, Herbert also alleged that Santangelo: (1) failed to warn Herbert that prisoner transfers pursuant to the treaty were discretionary; (2) failed to properly research the terms of the treaty program; and (3) advised Herbert that unless he withdrew his appeal, "the government would subject him to 'diesel therapy,'" *i.e.*, would "drag [him] around the country, indicting him in every" state in the eastern seaboard. (*Id.* at 17.) Herbert alleged that he withdrew his direct appeal "[b]ased solely on th[e] advice and guidance of appellate counsel." (*Id.* at 16.) He further alleged that he applied to the Bureau of Prisons (BOP) for a transfer to serve the remainder of his prison term in Belize and was informed for the "first time ever" on June 4, 2009 that his application had been denied. (*Id.* at 11.) As a remedy for Santangelo's alleged ineffectiveness, Herbert sought "vacatur of [his] underlying conviction and reimposition of the underlying judgment to afford" him the opportunity "to pursue a direct appeal." (*Id.* at 12.)

With the Court's leave, Herbert amended his petition to raise a second ground for relief: that the United States lacked jurisdiction to prosecute him for offenses that "occurred in the territorial waters of the sovereign nation of Belize." (Dkt. No. 13, at 1.) Herbert sought to have his conviction vacated on that ground. (*Id.* at 5.)

---

[2] This Court's docket lists the filing date as January 19, 2010. The government agrees that the Court should construe the petition as filed on December 9, 2009, the date that Herbert mailed his petition from prison. *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (discussing the "prison mailbox rule"); Letter from Brooke E. Cucinella dated May 20, 2013, at 3 (Dkt. No. 17) (noting that Herbert's petition was filed on December 9, 2009).

[3] *See generally* EVALUATION AND INSPECTIONS DIV., OFFICE OF THE INSPECTOR GEN., U.S. DEP'T OF JUSTICE, NO. I-2012-002, THE DEPARTMENT OF JUSTICE'S INTERNATIONAL PRISONER TRANSFER PROGRAM vi (Dec. 2011), PX-17), *available at* http://www.justice.gov/oig/reports/2011/e1202.pdf (last visited July 21, 2014).

The Court appointed counsel to represent Herbert in connection with his petition pursuant to the Criminal Justice Act. *See* 18 U.S.C. § 3006A(a)(2)(B). With the assistance of counsel, Herbert filed a second amended petition,[4] asserting a third claim: that the Court lacked jurisdiction over Herbert "because his removal to the United States violated the bilateral extradition treaty between the United States and Belize." (Dkt. No. 28, at 2.)

The Court held an evidentiary hearing on June 17, 2014 on the facts relating to two issues: (1) the timeliness of Herbert's petition, and (2) the merits of Herbert's claim for ineffectiveness of appellate counsel. (*See* June 17, 2014 Tr. at 2:8–3:3.) By that time, Herbert was represented by new counsel, also appointed pursuant to the Criminal Justice Act.[5] Herbert was present at the hearing but did not testify. The government called two witnesses: (1) Ebelia Carrero, a case manager at the Federal Correctional Complex (FCC) in Coleman, Florida, and (2) George Santangelo.

## II.  DISCUSSION

### 1.  *Herbert's Claim for Ineffective Assistance of Counsel Is Untimely.*

"A motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation" that "run[s] from the latest of four specified dates." *See Clay v. United States*, 537 U.S. 522, 524–25 (2003). "[I]n the generality of cases," "the only . . . relevant" triggering date for the one-year limitations period is the "date on which the judgment of conviction becomes final." *See id.* at 525 (citing 28 U.S.C. § 2255(f)(1)). Herbert readily acknowledges that he filed his petition far later than one year after his conviction became final.

---

[4] This submission did not incorporate the claims that Herbert had previously raised *pro se*. At a May 29, 2014 conference, this Court construed that filing, along with Herbert's original and amended petitions, to contain Herbert's three claims in this action. (May 29, 2014 Tr. at 4:2–19.)

[5] Mary Mulligan and Jennifer Mustes have the Court's appreciation for their diligent representation of Herbert at the June 17 hearing.

He seeks relief, however, in another of section 2255(f)'s dates for accrual of the one-year limitations period: "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). The Second Circuit has instructed that the "determination of the date on which the factual predicate for a habeas claim is first discoverable is a 'fact-specific' inquiry [that] requires a district court to analyze the factual bases of each claim and to determine when the facts underlying the claim were known, or could with due diligence have been discovered." *See Rivas v. Fischer*, 687 F.3d 514, 534 (2d Cir. 2012). "The statute does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." *See Wims v. United States*, 225 F.3d 186, 190 n.4 (2000). Courts assess the timeliness of a habeas petition on a "claim-by-claim basis." *See, e.g.*, *Zack v. Tucker*, 704 F.3d 917, 922–25 (11th Cir. 2013) (en banc) (collecting cases); *see also Rivas*, 687 F.3d at 534 (directing courts to "analyze the factual bases of *each* claim" to determine timeliness) (emphasis added).

The following record evidence is relevant to Herbert's timeliness argument.

Herbert's case manager at FCC Coleman, Ebelia Carrero, testified that in August 2005, she first discussed with Herbert the possibility of his seeking a transfer to serve the remainder of his sentence in Belize. (Tr. at 12:6–15.) Carrero advised Herbert that he was not eligible to seek a transfer because the BOP's program statement did not then list Belize as a participating country in the treaty transfer program.[6] (*Id.* at 13:3–15.) She advised Herbert that he could access the BOP's program statement in the law library at FCC Coleman.[7] (*Id.* at 13:20–14:5, 35:10–22.)

---

[6] Contrary to Belize's absence from the BOP's list of participating countries, Belize had in fact ratified the Inter-American Convention on Serving Criminal Sentences Abroad three months earlier, in June 2005. (PX-9; PX-10.)

[7] Carrero testified that Herbert never contacted her to state that he had any difficulty accessing the BOP program statement. (*Id.* at 61:6–9.) Although there is no record evidence regarding FCC Coleman prisoners' access to the law library specifically in 2005 or 2006, Herbert did introduce evidence that as of September 2008 and November 2012, prisoners had access to the library

Carrero's next meeting with Herbert regarding a possible transfer to Belize took place on February 16, 2006. (*Id.* at 19:2–13.) On that date, Herbert signed paperwork to initiate an application to serve the remainder of his sentence in Belize. (*Id.*; GX-9, at 2.) Herbert's signature "indicate[d his] . . . understand[ing]" that the paperwork began "an inquiry to obtain data before the actual request for transfer and [wa]s not binding upon either the government or [him]." (GX-9, at 2.) Carrero subsequently compiled a packet of materials necessary for a transfer application and submitted that packet to the U.S. Department of Justice. (Tr. at 20:14–22:5.)

On October 20, 2006, the Chief of the U.S. Department of Justice's International Prisoner Transfer Unit (IPTU) sent Herbert a letter advising him that his transfer request had been denied. (GX-9, at 8.) The grounds for denial were "the seriousness of the offense, serious law enforcement concerns and the concern caused by the presence of weapons in the overall offense conduct." (*Id.*) The letter advised Herbert that there was

> no administrative appeal from th[e] decision. The prisoner
> may reapply in the future. The application is more likely to
> be approved in the future if the prisoner has maintained the
> best possible prison record and has attempted to address
> those reasons for denial over which the prisoner has some
> control. Except as noted above, the prisoner may reapply
> two years after this denial. If the prisoner does reapply, the
> Department will review the information already in the file as
> well as any new information the prisoner provides.

(*Id.*) Carrero testified that she also received a copy of the October 2006 denial letter and met with Herbert in person in her office shortly after receiving the letter, in either late October or early November. (Tr. at 22:9–24:2.) Herbert was "very disappointed" to receive the denial letter. (*Id.* at 23:1.) Carrero reiterated to Herbert that he could reapply for a transfer after two years. (*Id.* at 46:5–7.)

With Carrero's assistance, Herbert reapplied for a transfer to Belize on February 11, 2009. (GX-9, at 9.) By letter dated June 4, 2009, the

---

seventy-five hours per week. (PX 15, at 29; PX 16, at 34.) Herbert has never argued that he lacked access to the law library at FCC Coleman.

Department of Justice informed Herbert that his request had once again been denied. (*Id.* at 10.)

Based on the record, the Court finds that Herbert filed his habeas petition well in excess of one year after the "date on which the facts supporting" his ineffective assistance claim "could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2255(f)(4).

In his original petition, Herbert alleged that he was unaware of the facts giving rise to his claim of ineffective assistance of appellate counsel until June 4, 2009, "when [he] was informed for the first time that [he] was not going to be transferred back to . . . Belize[] and that voluntarily dismissing [his] appeal did not entitle [him] to a mandatory or obligatory international prisoner [transfer] as suggested by appellate counsel." (Dkt. No. 1, at 11.)

The Court, however, finds that Herbert was on notice of the "facts underlying [his] claim" for ineffective assistance of appellate counsel much earlier — in approximately early November 2006, when he first learned that his request for a treaty transfer to Belize had been denied. *See Rivas*, 687 F.3d at 534. Section 2255(f)(4)'s one-year limitations period therefore expired long before Herbert filed his petition in December 2009, rendering Herbert's ineffective assistance of counsel claim untimely.

Now represented by counsel, Herbert asserts a new timeliness argument: that he reasonably believed in October 2006 that if he reapplied for a transfer to Belize after waiting two years, that request would likely be granted. (*See* Tr. at 107:24–110:21.) "It is only when Mr. Herbert learned that his second transfer application had been denied in June 2009 that he realized that Mr. Santangelo had been ineffective, making his December 2009 petition timely," Herbert contends. (*See* Mulligan Letter dated June 10, 2014 (Dkt. No. 32), at 1–2.) Herbert also introduced evidence at the hearing that the Office of the Inspector General of the U.S. Department of Justice has determined that the "reasons cited in [IPTU's] denial letters are often vague and are generally not understood by inmates and BOP case managers." *See* THE DEPARTMENT OF JUSTICE'S INTERNATIONAL PRISONER TRANSFER PROGRAM vi (PX-17).

The Court rejects counsel's timeliness argument. Although section 2255 "does not require" that a prisoner exercise "the maximum feasible diligence," the statute does require "reasonable[] diligence." *See Wims*, 225 F.3d at 190 n.4. Regardless of whether the October 20, 2006 letter cogently explained the *reasons* for denying Herbert's transfer application, a reasonable prisoner would have understood that the application had in fact not been approved. And a reasonably diligent prisoner whose counsel had advised that the transfer application "automatically" would be approved would not have waited two years to test the application process anew before realizing that counsel's alleged advice was inaccurate.[8]

In short, a prisoner of "reasonable[] diligence," *see Wims*, 225 F.3d at 190 n.4, would have been on notice upon receiving the October 20, 2006 denial letter that withdrawing a direct appeal did not "entitle [him] to a mandatory or obligatory" transfer, as Herbert alleges that Santangelo misadvised him (Dkt. No. 1, at 11.) Because Herbert raised his claim for ineffectiveness assistance of counsel more than one year after the "date on which the facts supporting" his ineffective assistance claim "could have been discovered through the exercise of due diligence," the Court dismisses that claim as untimely. *See* 28 U.S.C. § 2255(f)(4). The Court therefore does not reach the merits of the ineffective assistance claim.

### 2. *Herbert Is Not Entitled to Relief Pursuant to* United States v. Bellaizac-Hurtado, *700 F.3d 1245 (11th Cir. 2012).*

In a filing dated March 9, 2013, Herbert argued for the first time that because the conduct for which he was convicted "occurred in the territorial waters of the sovereign nation of Belize," the United States lacked jurisdiction to prosecute him. (*See* Dkt. Nos. 9, 13.) In support of his position, Herbert relies solely on a decision of the U.S. Court of Appeals for the Eleventh Circuit, issued on November 6, 2012. *See United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012).

---

[8] Santangelo testified that he never advised Herbert to apply for a transfer to Belize or to withdraw his appeal. (GX-4; Tr. at 70:9–11, 71:21–23, 73:6–7, 80:14–17, 90:15–17.)

The Court assumes, without deciding, that Herbert timely raised this claim and denies the claim on its merits.[9]

*Bellaizac-Hurtado* held that the Maritime Drug Law Enforcement Act, 46 U.S.C. §§ 70503(a), 70506, "exceed[ed] the power of Congress to 'define and punish . . . Offences against the Law of Nations.'" *See* 700 F.3d at 1247 (quoting U.S. Const. art. I § 8, cl. 10). Herbert was not convicted of violating that Act, but rather of violating the prohibitions in Title 21 of the U.S. Code against conspiring to import controlled substances into the United States, and against distributing a controlled substance with the intent that it be imported into the United States. *Bellaizac-Hurtado* therefore did not decide any new principle of law applicable to Herbert's case. The Court accordingly rejects Herbert's jurisdictional argument predicated on *Bellaizac-Hurtado*.[10] *See, e.g., Quninones v. Hollingsworth*, 2013 WL 2933099 (D.N.J. June 12, 2013) (holding that *Bellaizac-Hurtado* provided no basis for relief to a habeas petitioner convicted of violating of Title 21 of the United States Code, and not of violating the Maritime Drug Law Enforcement Act).

### 3. Herbert's Claim Regarding the Circumstances of His Transfer from Belize to the United States Is Untimely.

Herbert's final claim is that this Court lacked jurisdiction over his criminal prosecution "because his removal to the United States violated the bilateral extradition treaty between the United States and Belize." (Dkt. No. 28, at 2.) The Court thoroughly addressed the merits of that claim in its pre-trial decision denying Herbert's motion to dismiss the indictment. *See Herbert*, 313 F. Supp. 2d 324 (discussing, among other authorities, the

---

[9] *See Day v. McDonough*, 547 U.S. 198, 206, 209 (2006) (because "[a] statute of limitations defense . . . is not 'jurisdictional,'" "district courts are . . . not obliged[] to consider, *sua sponte*, the timeliness of a . . . habeas" claim). The government has not argued that the jurisdictional claim raised in Herbert's first amended petition is untimely.

[10] During the time that Herbert has been represented by counsel in his habeas petition, counsel has presented no argument in support of Herbert's jurisdictional claim predicated on *Bellaizac-Hurtado*. (*See, e.g.*, Mulligan letter dated June 10, 2014, at 1–3) (omitting this claim from the summary of "Mr. Herbert's Claims").

Belize Supreme Court's 2003 judgment awarding Herbert damages for violations of Herbert's rights pursuant to the constitution of Belize). Herbert has long been on notice of the facts giving rise to this claim. The Court therefore dismisses as untimely Herbert's jurisdictional claim based on the circumstances of his transfer from Belize to the United States, without revisiting the merits of that claim. *See* 28 U.S.C. § 2255(f)(4).

### III. CONCLUSION

The Court is mindful of the fact that Herbert is serving a very lengthy term of imprisonment. But Herbert has not timely asserted any claim that entitles him to habeas relief. Two of Herbert's habeas claims are untimely: those alleging (1) ineffective assistance of appellate counsel and (2) a lack of jurisdiction given the terms of Herbert's transfer to the United States. The Court therefore dismisses those claims. The Court denies on the merits Herbert's third claim, alleging that the United States lacked jurisdiction to prosecute him for conduct that occurred in the territorial waters of Belize.

Because Herbert has not made a substantial showing of the denial of a constitutional right, no certificate of appealability will issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445–46 (1962).

Dated:   New York, New York
         July 21, 2014

SO ORDERED:

Sidney H. Stein, U.S.D.J.

11